IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ERIC SCOTT DAVIDSON | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 6:21cv324 |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY | § § § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff initiated this lawsuit by filing a complaint seeking judicial review of the Commissioner's decision denying his application for Social Security benefits. The matter was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636. For the reasons below, the Commissioner's final decision is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this opinion.

**PROCEDURAL HISTORY**

Plaintiff protectively filed an application for Disability Insurance Benefits on October 30, 2019, alleging a disability onset date of November 29, 2017. The application was denied initially and on reconsideration. Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). The ALJ conducted a hearing and then issued an unfavorable decision on May 7, 2021. Plaintiff submitted a request for review of the ALJ's decision. The Appeals Council denied the request for review on June 21, 2021. Plaintiff filed this lawsuit on August 18, 2021, seeking judicial review of the Commissioner's decision.

## STANDARD

Title II of the Act provides for federal disability insurance benefits. Judicial review of the denial of disability benefits under section 205(g) of the Act, 42 U.S.C. § 405(g), is limited to "determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)); *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (*per curiam*). A finding of no substantial evidence is appropriate only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Accordingly, the Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling*, 36 F.3d at 435 (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)); *see Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). Rather, conflicts in the evidence are for the Commissioner to decide. *Spellman*, 1 F.3d at 360 (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)); *Anthony*, 954 F.2d at 295 (citing *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983)). A decision on the ultimate issue of whether a claimant is disabled, as defined in the Act, rests with the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 455–56 (5th Cir. 2000); Social Security Ruling ("SSR") 96-5p.

"Substantial evidence is more than a scintilla but less than a preponderance—that is, enough that a reasonable mind would judge it sufficient to support the decision." *Pena v. Astrue*, 271 Fed. Appx. 382, 383 (5th Cir. 2003) (citing *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994)).

Substantial evidence includes four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability; and (4) the plaintiff's age, education, and work history. *Fraga v. Bowen*, 810 F.2d 1296, 1302 n. 4 (5th Cir. 1987). If supported by substantial evidence, the decision of the Commissioner is conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). However, the Court must do more than "rubber stamp" the Administrative Law Judge's decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner's] findings." *Cook*, 750 F.2d at 393 (5th Cir. 1985). The Court may remand for additional evidence if substantial evidence is lacking or "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

A claimant for disability has the burden of proving a disability. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1)(A) and 423(d)(1)(A). A "physical or mental impairment" is an anatomical, physiological, or psychological abnormality which is demonstrable by acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

In order to determine whether a claimant is disabled, the Commissioner must utilize a five–step sequential process. *Villa*, 895 F.2d 1022. A finding of "disabled" or "not disabled" at any step of the sequential process ends the inquiry. *Id.*; see *Bowling*, 36 F.3d at 435 (citing *Harrell*, 862 F.2d at 475). Under the five–step sequential analysis, the Commissioner must determine at

Step One whether the claimant is currently engaged in substantial gainful activity. At Step Two, the Commissioner must determine whether one or more of the claimant's impairments are severe. At Step Three, the commissioner must determine whether the claimant has an impairment or combination of impairments that meet or equal one of the listings in Appendix I. Prior to moving to Step Four, the Commissioner must determine the claimant's Residual Functional Capacity ("RFC"), or the most that the claimant can do given his impairments, both severe and non–severe. Then, at Step Four, the Commissioner must determine whether the claimant is capable of performing his past relevant work. Finally, at Step Five, the Commissioner must determine whether the claimant can perform other work available in the local or national economy. 20 C.F.R. §§ 404.1520(b)–(f). An affirmative answer at Step One or a negative answer at Steps Two, Four, or Five results in a finding of "not disabled." *See Villa*, 895 F.2d at 1022. An affirmative answer at Step Three, or an affirmative answer at Steps Four and Five, creates a presumption of disability. *Id*. To obtain Title II disability benefits, a plaintiff must show that he was disabled on or before the last day of his insured status. *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981), *cert denied*, 455 U.S. 912, 102 S.Ct. 1263, 71 L.Ed.2d 452 (1982). The burden of proof is on the claimant for the first four steps, but shifts to the Commissioner at Step Five if the claimant shows that he cannot perform his past relevant work. *Anderson v. Sullivan*, 887 F.2d 630, 632–33 (5th Cir. 1989) (*per curiam*).

The procedure for evaluating a mental impairment is set forth in 20 CFR §§ 404.1520a and 416.920a (the "special technique" for assessing mental impairments, supplementing the five-step sequential analysis). First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work. 20 CFR §§ 404.1520a(b)(1), 416.920a(b)(1). Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional

4

loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. 20 CFR §§ 404.1520a(c)(2–4), 416.920a(c)(2–4). Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment. 20 CFR §§ 404.1520a(d), 416.920a(d). If the ALJ's assessment is "none" or "mild" in the first three areas of function and is "none" in the fourth area of function, the claimant's mental impairment is "not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 CFR §§ 404.1520a(d)(1), 416.920a(d)(1). Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a Listing. 20 CFR §§ 404.1520a(d)(2), 416.920a(d)(2). Finally, if a Listing is not met, the ALJ must then perform a residual functional capacity assessment, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding the claimant's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§§ 404.1520a(c)(3), 416.920a(c)(3)]." 20 CFR §§ 404.1520a(d)(3) and (e)(2), 416.920a(d)(3) and (e)(2).

## ALJ'S FINDINGS

The ALJ made the following findings in his May 7, 2021 decision:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2022.

2. The claimant has not engaged in substantial gainful activity since November 29, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: adjustment disorder with depression and anxiety, degenerative disc disease of the lumbar and cervical spine, and degenerative joint disease of the right knee (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry up to 20 pounds occasionally and 10 pounds frequently; walk or stand six hours of an eight-hour workday; and sit for six hours of an eight-hour workday. The claimant is limited to occasional overhead reaching bilaterally, frequent operation of foot controls with the right lower extremity, and occasional climbing of ramps, stairs, ladders, ropes or scaffolds, balancing, crouching and crawling. The claimant is able to understand, remember and carry out detailed but not complex instructions, and use judgment to make decisions. The claimant is able to initiate and perform tasks that are understood and known, he can work in proximity with coworkers and supervisors provided they do not have to work in collaboration to complete work tasks, and he is limited to no work related contact with the public. The claimant is able to respond appropriately to changes in a routine work setting.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565.

7. The claimant was born on December 19, 1979 and was 37 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 29, 2017, through the date of this decision (20 CFR 404.1520(g).

**ADMINISTRATIVE RECORD**

*Administrative Hearing*

Plaintiff testified at his hearing before the ALJ on October 13, 2020. Plaintiff testified that he only drives when necessary because he has anxiety and he does not leave the house unless necessary. His wife does the grocery shopping. Plaintiff stated that he was honorably discharged from the Army in 2015 and then worked at the post office until 2017. He stopped working when the VA started paying unemployability benefits. Plaintiff explained that he could not meet the physical demands of his job due to back, knee and neck pain and he could not get along with other people. He described having a slipped disc in his back and anxiety and paranoia.

Plaintiff testified that he cannot sit in one spot very long due to back pain and it causes him difficulty sleeping. He also stated that he has tinnitus, a cervical strain with radiculopathy into the left arm, loss of grip strength, ankle injuries, arthritis in the right hand and radiating pain from his lumbar injuries. Plaintiff described multiple incidents of getting into arguments with people, including supervisors. He also has difficulty remembering to do things and relies on reminders from his wife.

A vocational expert witness, Juanita Grant, also testified at the hearing. Ms. Grant classified Plaintiff's past work to include: (1) sawmill supervisor, DOT 669.130-026, medium, SVP 7; (2) letter mail carrier, DOT 230.367-010, medium, SVP 4; (3) vehicle operations, military, DOT 905.663-014, medium, SVP 4; and (4) mail clerk, DOT 243.367-014, light, SVP 4. The ALJ presented Ms. Grant a hypothetical individual of Plaintiff's age and education, able to work at the light exertional level, with occasional overhead reaching, frequent operation of foot controls with the right lower extremity, occasional climbing of ramps and stairs, ladders, ropes, and scaffolds, and occasional balancing, crouching and crawling, who can understand, remember and carry out

detailed but not complex instructions, is able to use judgment to make decisions and is able to initiate and perform tasks that are understood and known, can work in proximity with coworkers and supervisors provided they do not have to work in collaboration to perform tasks, no work-related contact with the general public and is able to respond appropriately to changes in a routine work setting.  Ms. Grant testified that the individual could not perform Plaintiff's past work.

Ms. Grant identified the following jobs that would be available to the hypothetical individual: (1) housekeeper, DOT 323.687-014, light, SVP 2, with approximately 133,000 jobs in the national economy; (2) price tagger, 209.587-034, light, SVP 2, with approximately 124,762 jobs in the national economy; and (3) food production worker, DOT 520.687-046, light, SVP 2, with approximately 1500 jobs in the national economy.  Ms. Grant stated that these jobs would be remain available if the individual is unable to handle conflicts with others.  She testified that no work would be available if the individual could not complete a normal workday or work week without interruption from psychologically based symptoms, including leaving work early on a consistent basis.

*Medical Record*

EMS took Plaintiff to the emergency room on April 17, 2017 with left flank pain and emesis.  An abdominal CT was unremarkable.  Plaintiff went to the clinic on May 25, 2017 complaining of shoulder pain following a work-related injury.  Plaintiff exhibited neck tenderness with normal range of motion.  Shoulder X-Rays showed no fracture or dislocation and cervical X-Rays showed mild cervical spondylosis.

Dr. Joe Bates provided mental health treatment for Plaintiff at the VA hospital.  On August 1, 2017, Plaintiff reported irritability and exhibited an anxious mood.  Dr. Bates's records note that Plaintiff has depressive disorder, anxiety disorder and chronic back pain with a 50% service-

connected disability rating. He stated that Plaintiff had fair insight and judgment. Plaintiff was referred to Scott Woods, Psy.D., for therapy to address his anxiety. Plaintiff canceled his scheduled appointment with Dr. Woods. Plaintiff saw Dr. Martin Jones on September 11, 2017 for back pain. Plaintiff stated that he strained his back bending over to pick up a package. He was treated with Naproxen and Flexeril.

At a telemedicine follow up with Dr. Bates on November 20, 2017, Plaintiff reported improvement to his mood and anxiety with Cymbalta and improved sleep with melatonin. Plaintiff returned to the emergency room on December 26, 2017 with fever and back pain. He had a normal gait and range of motion with tenderness over the cervical spine. At another telemedicine visit with a VA provider on March 19, 2018, Plaintiff reported increased irritability and a tendency to have verbal outbursts.

At a follow up with Dr. Jones on May 25, 2018, Plaintiff complained of chronic right ankle pain and chronic left knee pain. Dr. Jones noted that X-Rays showed a normal ankle and an old knee injury where the tendon from the kneecap attaches to the upper shin bone. The knee X-Rays showed no acute osseous pathology. Dr. Jones recommended continuing medication and physical therapy if there is no improvement. Another ankle X-Ray on July 1, 2018 was unremarkable. At a telemedicine mental health appointment on September 19, 2018, Plaintiff acknowledged inconsistent use of his psychiatric medications. Dr. Arain noted good insight and judgment, no gross difficulty with cognition, good remote and recent memory, grossly intact attention and concentration, linear and logical thought process and a euthymic affect. Plaintiff reported that his mood was "alright."

In 2019, Plaintiff's VA service-connected disability rating was increased to 100%, primarily attributed to chronic adjustment disorder. On February 12, 2019, a psychiatrist, Dr. John

Atkinson, Jr., completed a Disability Benefits Questionnaire Other Than PTSD. Dr. Atkinson diagnosed adjustment disorder with disturbance of emotions and conduct. Dr. Atkinson denied any other mental disorder diagnosis, including PTSD. He opined that Plaintiff has total occupational and social impairment with symptoms including depressed mood, anxiety, suspiciousness, panic attacks more than once a week, near continuous panic or depression affecting the ability to function independently, chronic sleep impairment, circumstantial, circumlocutory or stereotyped speech, difficulty in understanding complex commands, impaired judgment, disturbances of motivation and mood, difficulty in adapting to stressful circumstances, inability to establish and maintain effective relationships, suicidal ideation, impaired impulse control, and persistent delusions or hallucinations.

Plaintiff had a telemedicine follow up with a VA psychiatrist, Dr. Rajasekhar Valmiki, on June 13, 2019. Plaintiff reported having an "ok" mood and noncompliance with medication. Dr. Valmiki noted that Plaintiff's judgment, insight and impulse control were fair and he denied suicidal thoughts or hallucinations. She diagnosed adjustment disorder with anxiety depression. On September 9, 2019, he stated that he forgot to take his Cymbalta and had a stressed mood, but that he would restart the medication. Plaintiff had a "tired" mood, affect congruent to mood, linear thought process, and fair judgment, insight and impulse control. Dr. Valmiki diagnosed adjustment disorder with anxiety depression and cannabis use disorder mild. On December 3, 2019, Plaintiff had another telemedicine appointment with Dr. Valmiki. Plaintiff stated that Cymbalta helps him have a stable mood and reduced anxiety, but he stopped taking it temporarily while he had the flu. Plaintiff reported less irritability and less mood interference with functioning when compliant with his medication. Plaintiff denied having suicidal thoughts, low energy, loss

of interest, impaired concentration or recurrent anxiety episodes. Dr. Valmiki continued Plaintiff on Cymbalta daily and Vistaril prn for anxiety.

Dr. F.P. Reuter completed a consultative examination on February 18, 2020. Dr. Reuter observed that Plaintiff could pick up a paper clip with either hand, his lower extremities showed good reflexes, strength was good, straight leg raises were unremarkable, Plaintiff walked without difficulty and he could stand on either foot, squat and bend to 60 degrees. Plaintiff's neck showed mild limitation of motion and his right knee could flex to 100 degrees. Dr. Reuter opined that there was no evidence of a nerve root disorder or muscular wasting or weakness related to low back pain and no evidence of radiculopathy associated with neck pain. A lumbar spine X-Ray and right knee X-Rays showed mild degenerative changes.

A State agency medical consultant, Dr. Brian Harper, reviewed the medical record and completed an assessment of Plaintiff's physical residual functional capacity on February 20, 2020. Dr. Harper opined that Plaintiff can occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, stand and/or walk for 6 hours in an 8-hour workday, sit for 6 hours in an 8-hour workday, push and/or pull within lift/carry restrictions, occasionally climb ramps/stairs, ladders/ropes/scaffolds, and balance with unlimited stooping, kneeling, crouching or crawling. On reconsideration, another State agency medical consultant, Dr. Tina Ward, reviewed the record and opined that Plaintiff can occasionally lift and carry 50 pounds, frequently lift and carry 25 pounds, stand and/or walk for 6 hours in an 8-hour workday, sit for 6 hours in an 8-hour workday, push and/or pull within lift/carry restrictions, and frequently perform all posturals.

A State agency psychological consultant, Susan Posey, Psy.D., reviewed the record and opined on February 28, 2020 that Plaintiff's mental limitations "impose no more than a non-severe

impact [on] functioning."[1] On reconsideration on April 17, 2020, Robert B. White, Ph.D., agreed with Dr. Posey's assessment that Plaintiff's "capacity to be successful with work related tasks remains intact."[2]

Dr. Valmiki conducted a telemedicine examination on March 10, 2020. She noted that Plaintiff described his mood as "tired," his affect was congruent to mood, and he had fair judgment, insight and impulse control. Plaintiff denied suicidal ideation or hallucinations. Plaintiff again reported reduced irritability on Cymbalta.

Plaintiff had a rectal sphincterotomy on April 28, 2020. Plaintiff had a telephone follow up with Dr. Duggirala on June 11, 2020 and reported doing well with no concerns.

On February 25, 2021, Tina Lloyd Borke, Psy.D., completed a consultative examination that included reviewing Plaintiff's VA records. She observed that Plaintiff had racing and ruminative thoughts. He denied hallucinations or delusions. Plaintiff reported Post-Traumatic Stress Disorder with depression, anxiety and panic attacks. Dr. Borke noted that Plaintiff had good sensorium, fair remote memory, good recent memory, fair concentration and poor judgment. She stated that Plaintiff appeared to have borderline intellectual functioning. Testing showed low average cognitive functioning. Dr. Borke diagnosed specific learning disorder with impairment in mathematic computation, borderline intellectual functioning, generalized anxiety disorder, major depressive disorder, recurring, moderate, and post traumatic stress disorder. Dr. Borke concluded that Plaintiff has marked limitations in his abilities to interact appropriately with the public, supervisors or co-workers and to respond appropriately to usual work situations and changes in a routine work setting, moderate limitations in the ability to make judgments on simple work-related decisions, understand and remember complex instructions, carry out complex instructions and the

---

[1] Administrative Record, ECF 11-4, at *10 (Bates stamp p. 91).
[2] *Id*. at *27 (Bates stamp p. 108).

ability to make judgments on complex work-related decisions, and mild limitations in the ability to understand and remember simple instructions and to carry out simple instructions. She stated that these limitations are supported by her finding of post traumatic stress disorder.

## DISCUSSION AND ANALYSIS

In his brief, Plaintiff presents three issues for review: (1) whether the ALJ erred as a matter of law by failing to provide sufficient explanation with respect to supportability and consistency of the two medical doctor's opinions, in violation of 20 C.F.R. § 404.1520c; (2) whether the ALJ erred as a matter of law by rejecting Dr. Borke's opinion because it was "based on a one-time examination of the claimant;" and (3) whether the ALJ erred as a matter of law by applying an improper legal standard to the determination that Plaintiff's major depressive disorder was a non-severe impairment. Plaintiff submits that the ALJ provided an insufficient explanation and inadequate discussion of the supportability and consistency factors when evaluating Dr. Borke's opinion. Plaintiff argues that the Court cannot undertake a meaningful review of the ALJ's consideration of Dr. Atkinson's or Dr. Borke's opinion because the ALJ only provided a conclusory statement concerning their consistency and supportability. Plaintiff also asserts that the ALJ did not consider Dr. Borke's opinion that he would have marked impairments in mental processing speed. Next, Plaintiff submits that the ALJ improperly rejected Dr. Borke's opinion because it was based on a one-time examination. Finally, Plaintiff contends that the ALJ similarly erred by failing to find the severe mental impairment of major depressive disorder, as opined by Dr. Borke, because it was discovered during a one-time evaluation.

In response, the Commissioner notes that the ALJ found adjustment disorder with depression and anxiety as a severe impairment. The Commissioner submits that Plaintiff is essentially arguing semantics by alleging error in the failure to find major depressive disorder as a

severe impairment and the ALJ applied the correct standard found in SSR 85-28. Further, the Commissioner asserts that the ALJ thoroughly summarized and considered the treatment record, Plaintiff's statements and Dr. Borke's examination in his decision prior to arriving at his conclusions concerning the consistency and supportability of the medical opinions. The Commissioner argues that the ALJ's decision shows that he properly discussed and evaluated all evidence and did not base his finding concerning Dr. Borke's opinion solely on the basis that it was a one-time examination.

In his reply, Plaintiff re-asserts his argument that the ALJ must provide a detailed explanation of his consideration of the supportability and consistency factors for a court to conduct a meaningful review of his reasoning. Plaintiff argues that the ALJ did not provide sufficient information for the Court to evaluate his finding. Plaintiff again asserts that the ALJ failed to consider Dr. Borke's finding that he has marked limitations in processing speed, erroneously considered the fact that Dr. Borke only examined him once and applied the wrong standard to determine that his major depressive disorder is non-severe.

**Severe and Non-Severe Impairments**

Plaintiff contends that the ALJ erred by failing to find major depressive disorder, diagnosed by Dr. Borke, as a severe impairment. At step two, the burden is on the claimant to establish a severe impairment. *Anderson v. Sullivan*, 887 F.2d at 632–33. Severe impairments include "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.20(c). An impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th

Cir. 1985) (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984). If the ALJ applies the incorrect legal standard when assessing severe and non-severe impairments, reversal is generally required. *Id*. at 1106.

In his decision, the ALJ explained that a "severe" impairment is "more than a slight abnormality and imposes more than a minimal limitation on physical or mental ability to engage in basic work activities (SSR 85-28)," and then summarized Plaintiff's subjective allegations, the treatment record and the consultative examinations.[3] He noted that Dr. Atkinson diagnosed adjustment disorder with anxiety and depression. After summarizing Dr. Borke's consultative examination findings, the ALJ stated:

> Dr. Borke diagnosed the claimant with major depressive disorder; however, the claimant's medical records from the VA reflect a diagnosis of adjustment disorder with anxiety and depression. Given that these impairments were diagnosed based on a one-time assessment in February 2021, the undersigned does not find that they are severe impairments for the purpose of this decision; however, the undersigned has considered all of the claimant's mental symptoms and limitations in determining whether the claimant's mental limitations meet or equal a listing and in determining the claimant's mental residual functional capacity.

Administrative Record, ECF 11-2, at *32 (Bates stamp p. 31). Rather than address whether major depressive disorder is more than a slight abnormality that causes more than minimal interference with Plaintiff's ability to work, the ALJ appears to determine that "adjustment disorder with anxiety and depression" is a more appropriate diagnosis than "major depressive disorder" because it was diagnosed by a treating physician rather than a consultative examiner. It is not clear from the record that the two diagnoses are interchangeable or apply to the same objective examination findings. It is clear, however, that the ALJ proceeded with his analysis and expressly considered Dr. Borke's examination findings at step three and step four.[4] Reversal for failure to apply the

---

[3] Administrative Record, ECF 11-2, at *27–32 (Bates stamp p. 26–31).
[4] *Id*. at *34, *36–37 (Bates stamp p. 33, 35–36).

correct standard at step two is not necessarily required if the ALJ follows through with his analysis and considers the effect of the impairment at step three and step four. *See, e.g., Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987); *Holmes v. Astrue*, 2013 WL 638830, at *12 (N.D.Tex. Jan. 25, 2013). As a result, the Court proceeds with consideration of the ALJ's RFC finding.

**RFC Finding**

At step four, the ALJ considers a claimant's residual functional capacity. It is the ALJ's responsibility to determine a claimant's residual functional capacity ("RFC"). *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). That finding, however, must be supported by substantial evidence. *Id*. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Newton v. Apfel*, 209 F.3d at 452. On review, the Court will scrutinize the record to determine whether substantial evidence is present to support the ALJ's finding, but the Court cannot reweigh the evidence or substitute its judgment. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). "If the Commissioner's fact findings are supported by substantial evidence, they are conclusive." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971)).

The revised rules for the consideration and articulation of medical opinions apply to claims filed after March 27, 2017. 20 C.F.R. § 404.1520c. Plaintiff filed his application on October 30, 2019. Pursuant to 20 C.F.R. § 404.1520c(a), the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." The ALJ evaluates the persuasiveness of the medical opinions and articulates the consideration of medical opinions, but the ALJ is not required to explain the consideration of each factor that is considered. 20 C.F.R. § 404.1520c(b). The "supportability" and "consistency" factors are most important. *Id*.

After summarizing the treatment record, consultative examinations and subjective allegations at step two, and considering Plaintiff's limitations in the context of the listed impairments at step three, the ALJ turned to consideration of Plaintiff's RFC. The ALJ determined that the assessed RFC is supported by physical examinations showing reduced range of motion in the neck, back and legs, imaging showing degenerative disc disease in the cervical spine, lumbar spine, and knee, full scale IQ testing in the borderline range, Plaintiff's low processing speed, and fair judgment, insight and impulse control. The ALJ noted that Plaintiff was cooperative during many exams and agitated and irritable during his consultative examination. The ALJ also considered Plaintiff's ability to manage finances, prepare simple meals, and drive, his non-compliance with medication and documented improvement when taking his medication. The ALJ concluded that Plaintiff's statements about the intensity, persistence and limiting effects of his symptoms are inconsistent with his daily activities and the benefit received when he takes his medication.

The ALJ then addressed the medical opinions and prior administrative medical findings in the record. The ALJ considered the prior administrative findings globally and determined that none of the State agency consultant opinions are persuasive because they are inconsistent with the record as a whole, fail to fully evaluate the full effect of claimant's impairments, and do not adequately consider evidence of record establishing more symptoms than found in the assessments. The ALJ similarly determined that the VA disability rating is not persuasive because the VA uses different rules and regulations for disability decisions.

The ALJ provided the following analysis of Dr. Atkinson's opinion and Dr. Borke's opinion:

> The opinion[] of Dr. Atkinson [is] not persuasive because it is conclusory and fails to identify the maximal functional abilities of the claimant. In addition, the

17

> undersigned further finds his opinion is not well supported by the remainder of the record or consistent with the record as whole, and therefore, the opinion is not persuasive (Exhibit 8F).
>
> The opinions of Dr. Borke are not persuasive as the evidence of record establishes claimant's impairments did not produce symptoms as severe as found in this statement (marked – extreme limitations) and fails to identify the maximal functional abilities of the cla[i]mant. Furthermore, the opinion is not consistent with the objective evidence of record and is based on a one-time examination of the claimant (Exhibits 23F and 24F).

Administrative Record, ECF 11-2, at *37 (Bates stamp p. 36).

The ALJ's sparse and conclusory explanation leaves the Court to speculate as to the reasoning behind his persuasiveness findings. Rather than identifying any of the specific examination findings that do not support or are inconsistent with the opinions, the ALJ simply refers to "the record as a whole" and "the objective evidence of record." Indeed, in the analysis of the State agency consultant opinions the ALJ does not even distinguish between the opinions of the different consultants and refers to them collectively. The contours and requirements of the persuasiveness analysis have not been clearly defined in case law but the ALJ did not do anything more than make conclusory statements that the opinions are not consistent with the record. While it is not necessary to restate all of the treatment notes and findings that are cited earlier in the decision, the ALJ did not provide enough information to glean which findings in the opinions he finds unsupported and inconsistent or which objective findings do not support and/or are not consistent with the opinions. There is not a discernible bridge between the evidence and the ALJ's finding. *See, e.g., Ramirez v. Saul*, 2021 WL 2269473 (W.D.Tex. June 3, 2021). Identifying inconsistencies in the record, for example, can create that "logical bridge." *Hill v. Social Security Administration*, 2022 WL 307383, at *6 (E.D.La. Feb. 2, 2022).

In this case, the ALJ did not apply the proper legal standards at step two or step four of the analysis.  The decision is not supported by substantial evidence.  As a result, the decision of the ALJ denying benefits must be reversed.  *See Carey v. Apfel*, 230 F.3d 131, 143 (5th Cir. 2000).  The errors require a remand.

It is therefore

**ORDERED** that the Commissioner's final decision is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this opinion.

So ORDERED and SIGNED this 26th day of May, 2022.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE